AMERICAN VIKING CONTRACTORS, INC., Plaintiff,

v.

SCRIBNER EQUIPMENT CO., INC., et al., Defendants.

SCRIBNER EQUIPMENT CO., INC., Plaintiff-Appellee,

v.

Henry F. NELSON, Defendant-Appellant.

No. 83–8748.

United States Court of Appeals, Eleventh Circuit.

Nov. 5, 1984. .

D.W. Latimore, Jr., Teresa D. Darroch, Atlanta, Ga., for defendant-appellant.

A. Felton Jenkins, Jr., Atlanta, Ga., for Scribner & Prude.

Before FAY and JOHNSON, Circuit Judges, and YOUNG *, District Judge.

FAY, Circuit Judge:

Appellee Scribner Equipment Company, Inc. ("Scribner") brought suit against Henry Nelson seeking the outstanding, unpaid balance due on a corporate purchase money note which Nelson had personally guaranteed. Summary judgment was entered by the district court in favor of Scribner for $37,919.03 plus the appropriate interest. Nelson argues on appeal that summary judgment was improper because there were several questions of material fact which should have been put before a jury. After carefully reviewing the record, we hold that the district court was justified in its conclusion that there were no genuine issues as to any material fact. Summary judgment was therefore proper and the decision of the district court is affirmed.

FACTS

American Viking Contractors, Inc. ("AVC") is a Pennsylvania corporation with its principal place of business in the state of Georgia. Scribner Equipment Co., Inc. is incorporated under the laws of Delaware and its principal place of business is in the

* Honorable George C. Young, U.S. District Court Judge for the Middle District of Florida, sitting by designation.

state of Mississippi. In the fall of 1980, AVC purchased from Scribner certain mining equipment for use in its deep coal mining operations. The total cost to AVC was approximately $1,011,000 for which AVC executed six purchase money notes. In March of 1981, after making payments totalling approximately $133,000, AVC encountered financial difficulty and was unable to continue making payments on its debt. In the months which followed, several meetings were held between Henry Nelson, General Manager of AVC, and various representatives of Scribner. While restructuring of AVC's debt was among the topics discussed at these meetings, the parties disagree as to whether a final restructuring agreement was ever reached.

On September 2, 1981, Larry Lauver, President of AVC, delivered to Scribner the title to certain unencumbered equipment to be used as additional security for AVC's debt. The next day Nelson, whose family owns all the stock in AVC, executed a guaranty agreement making him personally liable for $612,010; an amount which represents the largest of the six notes held by Scribner. A month after Nelson's personal guaranty was signed, AVC's financial state was still such that it was unable to make a payment on its debt for the mining equipment. Consequently, Scribner proceeded to repossess the equipment which it had previously sold to AVC. On November 2, 1981, Scribner sold the mining equipment at a public foreclosure sale. Although the equipment was advertised and other bids were received, Scribner was the highest bidder and consequently purchased the equipment for $152,000. The mining equip-

ment was subsequently sold by Scribner for $599,955.

## COURSE OF PROCEEDINGS

On December 31, 1981, AVC filed suit in the Superior Court of Dade County, Georgia, against Scribner and various executives of that corporation.[1] In its complaint, AVC sought an order cancelling AVC's indebtedness to Scribner and compelling Scribner to return the mining equipment which it had repossessed.[2] The defendants subsequently removed the case to the United States District Court for the Northern District of Georgia where, in addition to their answer, they filed a counterclaim seeking recovery of the deficiency owed Scribner by AVC. A separate action also was filed by Scribner against Nelson for the outstanding unpaid balance of $337,919.03 due on the promissory note guaranteed by Nelson.[3] Nelson answered the complaint by admitting that he signed the guaranty but alleging that he did so based on Scribner's alleged promise to restructure AVC's debt. Nelson thereafter filed a counterclaim against Scribner seeking to have his guaranty declared null and void and to recover punitive damages and attorney's fees.

On February 18, 1983, Scribner filed a motion for summary judgment on its counterclaim against AVC and in the separate action against Nelson on his personal guaranty. On September 20, 1983, the district court entered summary judgment in favor of Scribner in both cases. In its order granting summary judgment, the district court found that the unpaid balance on the note guaranteed by Nelson totalled $637,919.03, and that the value of the repos-

---

**1.** Also named as co-defendants in AVC's complaint were J.R. Scribner, Chairman of the Board of Scribner Equipment Company, Inc., J.O. Prude, Secretary of Scribner and its registered agent for service of process, and John Doe 1–3 as officers, directors and shareholders of Scribner.

**2.** AVC's complaint also sought the cancellation of an alleged fraudulently obtained assignment of security deeds by Scribner on AVC's corporate headquarters, plus an accounting, damages for conspiracy, attorney's fees and costs.

**3.** Scribner's complaint against Nelson also named as a co-defendant Minerals Development Company, Inc. ("MDC"), another corporation in which Nelson had a substantial interest. MDC is incorporated under the laws of Tennessee and is registered to do business in Georgia. At the time Nelson executed his personal guaranty, MDC also signed guaranties for all six of AVC's original purchase money notes. MDC, however, later filed Chapter 11 bankruptcy and Scribner sought no further relief against it.

sessed mining equipment which secured this note was $600,000 at the time of foreclosure. Accordingly, summary judgment was entered against Nelson for $37,919.03.

It should be noted at the outset that this appeal involves only Scribner's separate action against Nelson. AVC never responded to Scribner's motion for summary judgment nor did it appeal the order granting that motion. That case, therefore, is not now before us.

## STANDARD OF REVIEW

Nelson's primary contention on appeal is that the district court erred in granting Scribner's motion for summary judgment because there were several questions of material fact to be decided by a jury. Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment shall be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." "The party seeking summary judgment bears the exacting burden of demonstrating that there is no genuine dispute as to any material fact in the case." *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970) and *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 990–91 (5th Cir.1981)). Once the moving party has sufficiently supported his motion for summary judgment, the opposing party must come forward with significant probative evidence demonstrating the existence of a triable issue of fact. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir.1978).[4] In reviewing the decision of the district court granting Scribner's motion for summary judgment, we must apply the same legal standards as those which control the district court. *Clemons*, 684 F.2d at 1368.

## RESTRUCTURING AGREEMENT

The first issue of material fact which Nelson argues precluded summary judg-

ment is whether a final restructuring agreement was ever reached. Nelson takes the position that there was a valid agreement by Scribner to restructure AVC's debt and to not foreclose on the mining equipment. He further argues that this restructuring agreement was the inducement for the additional collateral and the personal guaranty. Scribner, on the other hand, maintains that while a restructuring of AVC's debt was discussed, no final agreement was ever reached. According to Scribner, Nelson's personal guaranty was given as security for an antecedent debt and not in return for any restructuring agreement.

The district court concluded that any oral promise by Scribner in regard to restructuring was "too indefinite to be enforceable." (R.Vol. 1 at 249). We agree. The record indicates that not one of the terms essential to a definitive restructuring agreement was ever agreed to. The duration of the new payment period was not specified. There was no agreement as to the amount of the periodic payments nor what rate of interest would apply. As Nelson himself testified, "everything was in a discussion stage or period. Nothing had been nailed down...." (R.Vol. 1 at 230). Under Georgia law, an alleged contract cannot be enforced in any form of action if its terms are vague, indefinite and uncertain. *General GMC Trucks, Inc. v. Mercury Freight Lines*, 704 F.2d 1237, 1240 (11th Cir.1983) (applying Georgia law); *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 164 S.E.2d 229, 231 (1968); *West v. Downer*, 218 Ga. 235, 127 S.E.2d 359, 364 (1962); *Sawyer v. Citizens and Southern National Bank*, 164 Ga.App. 177, 296 S.E.2d 134, 137 (1982).

The most which can be said concerning the negotiations of these parties is that they resulted in an agreement to agree in the future. The law of Georgia is clear

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the deci-

sions of the former Fifth Circuit handed down prior to October 1, 1981.

that unless all terms and conditions are agreed upon and nothing is left to future negotiations, a contract to enter into a contract in the future is a nullity. *Dumas v. First Federal Savings and Loan Association,* 654 F.2d 359, 360–61 (5th Cir.1981);[5] *Hartrampf v. Citizens & Southern Realty Investors,* 157 Ga.App. 879, 278 S.E.2d 750, 752 (1981). The agreement which Nelson alleges existed clearly falls within the ambit of this rule. We, therefore, agree with the district court's finding that the alleged agreement is too indefinite to be enforceable. Furthermore, Nelson's inability to show a meeting of the minds as to even a single term essential to a restructuring plan convinces us that the district court was justified in finding that there were no genuine issues as to any material fact regarding this matter. Consequently, the order granting Scribner's motion for summary judgment was not improper in this respect.

## ACCORD AND SATISFACTION

Nelson further argues that Scribner had no right to repossess the mining equipment because AVC's compliance with Scribner's request for additional collateral and a personal guaranty from Nelson resulted in an accord and satisfaction of the previous debt agreement. This argument, however, is fatally dependent on Nelson's first assertion that a valid restructuring agreement exists.

Under Georgia law, an accord and satisfaction exists when the parties to an original agreement satisfy their obligations under that agreement by a subsequent agreement. *See, e.g., Mitchell & Pickering v. Louis Isaacson, Inc.,* 139 Ga.App. 733, 229 S.E.2d 535, 537 (1976). Furthermore, an accord and satisfaction is "itself a contract and must have all the elements of a de novo contract." *Slappey Builders, Inc. v. FDIC,* 157 Ga.App. 343, 277 S.E.2d 328, 332 (1981) (quoting *Mayer v. Turner,* 142 Ga.App. 63, 234 S.E.2d 853, 855 (1977); *see also Sylvan Property Management, Inc. v. Garner,* 144 Ga.App. 747, 242

S.E.2d 292 (1978) (accord and satisfaction requires meeting of the minds). Having already held that the negotiations concerning restructuring of AVC's debt did not result in an enforceable contract, it follows that they likewise cannot form the basis of a valid accord and satisfaction. Moreover, it is clear from the record that an accord and satisfaction was not contemplated at the time the negotiations took place. Where there is no discussion, agreement or understanding, either express or implied, between the parties that a subsequent agreement would be in satisfaction of the former, there can be no accord and satisfaction. *See Stone v. First National Bank of Atlanta,* 159 Ga.App. 812, 285 S.E.2d 207 (1981); *James v. Mack Trucks, Inc.,* 146 Ga.App. 689, 247 S.E.2d 215 (1978).

## FAILURE OF CONSIDERATION

Nelson further argues that the district court erred in granting Scribner's motion for summary judgment because Nelson's guaranty "was void for want of consideration." Brief for Appellant at 24. The theory underlying this argument is that Nelson's personal guaranty was given in return for Scribner's promise to restructure AVC's debt. Because Scribner failed to fulfill this promise, Nelson reasons that his personal guaranty is void and unenforceable.

While the specific defense asserted is want of consideration, the argument propounded by Nelson in support of this defense is more properly one for failure of consideration. The Supreme Court of Georgia has held that want of consideration and failure of consideration are separate and distinct defenses. *Deep South Services, Inc. v. Wade,* 248 Ga. 80, 281 S.E.2d 561, 564 (1981). Because of the confusion on this issue, we will consider Nelson's argument in the context of both the failure of consideration defense and the want of consideration defense.

5. See note 4, *supra.*

■ The defense of failure of consideration cannot be established without first determining what the consideration was. We find Nelson's claim that an agreement by Scribner to restructure AVC's debt was the consideration for which he executed his personal guaranty contrary to the terms of the guaranty agreement itself:

> In consideration of [Scribner] ... giving or extending credit to: [AVC] ... I hereby give this Continuing Guaranty ... for the payment in full ... of any indebtedness ... to the amount of [$612,010.00 plus interest] ... now existing or hereafter arising....
>
> IT IS EXPRESSLY AGREED that this Continuing Guaranty is absolute and complete....

(R.Vol. 2 at 11). The guaranty is clear and unambiguous on its face and makes no mention whatsoever of a restructuring agreement. Clearly the only consideration alluded to within the four corners of the instrument is the extension of credit represented by the largest of the six notes, $612,010.00, and any future credit which may be extended. Undisputed evidence that the face amount of a guaranty at the time of its execution is equal to an amount already owed the other party to that guaranty establishes beyond dispute that the guaranty was given as security for an antecedent obligation. *Cf. General Tire & Rubber Co. v. Solomon,* 124 Ga.App. 308, 183 S.E.2d 573 (1971) (evidence that face amount of note equals past due debt establishes note given for antecedent debt). In such a case, the defense of failure of consideration is not available to the defendant. *Id.* at 574. We therefore agree with the district court's conclusion that the guaranty was an unconditional promise to pay which in no way depended on a future restructuring of AVC's debt. Having found that Scribner's alleged promise to

restructure was not the consideration for which Nelson executed his personal guaranty, Nelson's argument that there was a failure of that consideration is unpersuasive.

■ We also find no error on the part of the district court in not considering Nelson's allegations of why he executed the guaranty agreement. "Parol evidence is not admissible to vary or contradict the unconditioned promise to pay provided in a ... guaranty agreement." *Rizk v. Jones,* 148 Ga.App. 473, 251 S.E.2d 360, 361 (1978), *aff'd,* 243 Ga. 545, 255 S.E.2d 19 (1979).[6]

## WANT OF CONSIDERATION

■ Having determined that Nelson's guaranty was given as security for an antecedent debt, we next turn to the issue of whether any additional consideration is needed to render Nelson's unconditional promise to pay enforceable. The applicable Georgia law provides that "[w]ant or failure of consideration is a defense ... except that no consideration is necessary for an instrument or obligation thereon given in payment of or as security for an antecedent obligation of any kind." O.C.G.A. § 11-3-408 (1982). This section is clearly applicable to the situation where an individual personally guarantees a corporate debt evidenced by a note. *See, e.g., J.M. Tull Industries, Inc. v. Reed,* 160 Ga.App. 89, 286 S.E.2d 325 (1981); *see also Deep South Services,* 281 S.E.2d at 563–64; *Hurt v. Citizens Trust Co.,* 128 Ga.App. 224, 196 S.E.2d 349 (1973); *Solomon,* 183 S.E.2d 573. In construing this statute, the Georgia courts have held that the "except" clause relates to want or lack of consideration, but not to failure of consideration. *See, e.g., Deep South Services,* 281 S.E.2d at 564. Since Nelson's guaranty was given as security for an antecedent loan from

---

**6.** We are, of course, mindful of the fact that experienced businessmen do not routinely give personal guaranties for hundreds of thousands of dollars out of mere sympathy for their creditors. The fact remains, however, that well-settled rules of contract construction preclude a finding consistent with Nelson's position. "If the parties to a transaction do not create binding agreements, the courts are powerless to do it for them, or to afford a remedy for a breach." *Scott v. Lewis,* 112 Ga.App. 195, 144 S.E.2d 460, 461 (1965).

**1372**

Scribner to AVC, no additional consideration was necessary.[7]

## ESTOPPEL AND FRAUD

Nelson next argues that there was a question of material fact for the jury on the issue of whether Scribner intentionally misrepresented its plans to restructure AVC's debt. Specifically, Nelson contends that Scribner knowingly and falsely represented that it would restructure AVC's debt and forego foreclosure on the mining equipment in return for AVC and Nelson providing additional collateral and a personal guaranty on AVC's debt. Nelson relies on this argument as justification for his counterclaim for fraud and for his contention that Scribner is estopped from asserting any right it might have to foreclose on the mining equipment and to seek a deficiency against Nelson. The district court rejected both the estoppel and fraud arguments. We agree.

■■■■■ Estoppel in Georgia is premised on a false representation within the knowledge of the party making it, whose intent was to influence the other party, which other party was ignorant of the falsehood of the representation and was *induced* by it to act to his detriment. *See, e.g., Bell v. Studdard*, 220 Ga. 756, 141 S.E.2d 536 (1965). We have already held, however, that any representations by Scribner concerning restructuring were too indefinite to be enforced. Reliance on such an indefinite representation would be unjustified and therefore incapable of satisfying the inducement element necessary for a valid estoppel defense. *Cf. Georgia Public Service Commission v. Atlanta Gas Light Co.*, 205 Ga. 863, 55 S.E.2d 618 (1949) (estoppel cannot vitalize that which law declares void). Moreover, our previous conclusion that Nelson did not give his guaranty in reliance on these representations by Scribner precludes altogether any inducement argument by Nelson to the contrary.

■■■■■ Similarly, a cause of action for fraud arises under Georgia law when there is a misrepresentation of material fact by the defendant, made with knowledge that it was false or with reckless disregard as to whether it was true, and with intent to deceive the plaintiff, whereby the plaintiff acts upon the misrepresentation in *reasonable reliance* upon its veracity in a manner which causes proximate injury. *E.g., Marriott Corp. v. American Academy of Psychotherapists, Inc.*, 157 Ga.App. 497, 277 S.E.2d 785, 787 (1981). Again, Scribner's alleged promise to restructure AVC's debt was merely an agreement to agree in the future; a nullity under Georgia law. A promise which is unenforceable cannot be reasonably relied upon and thus cannot form the basis for an action in fraud. *White v. I.T.T.*, 718 F.2d 994, 997 (11th Cir.1983) (applying Georgia law), *cert. denied*, —— U.S. ——, 104 S.Ct. 1914, 80 L.Ed.2d 462 (1984); *see also Lively v. Garnick*, 160 Ga.App. 591, 287 S.E.2d 553, 557 (1981) (actionable fraud generally cannot be predicated upon promises to perform future acts).

## CONCLUSION

Our review of the record convinces us that the district court was justified in its conclusion that there were no genuine issues as to any material fact which warranted submission to a jury. Clearly the discussions concerning restructuring of AVC's debt fell far short of the requirements for an enforceable agreement. This determination having been made, Nelson's arguments concerning accord and satisfaction, consideration, fraud and estoppel are unpersuasive. We therefore hold that the district court did not err in granting Scribner's motion for summary judgment.

AFFIRMED.

---

**7.** The district court disposed of this issue by finding that Scribner's foregoing foreclosure for one month was in effect consideration sufficient for an enforceable contract. Having held that no consideration is necessary under these facts, we need not decide the question of whether foregoing foreclosure can constitute adequate consideration.